FOWLER v. FOWLER.

(Filed October 21, 1902.)

BASTARDY—*Legitimation—The Code, Secs. 39, 136, 255—Acts 1887, Chap. 766.*

Where, by the laws of the domicile of the parents at the time of the birth of their bastard child and of their marriage, their marriage legitimates him, the legitimacy attaches at the time of the marriage, he being a minor, and follows him wherever he goes.

ACTION by S. G. Fowler against Kitty Seaman and Kit Stanley Fowler, heard by Judge *Walter H. Neal,* at Chambers, MOORE County. From a judgment for the plaintiff, the defendant Kitty Seaman Fowler appealed.

FOWLER *v.* FOWLER.

*U. L. Spence,* for the plaintiff.

*Douglass & Simms,* and *Shepherd & Shepherd,* for the defendant.

CLARK, J. This is a proceeding begun before the Clerk by the plaintiff for the legitimation of his son under The Code, Sec. 39. The petition alleges that the plaintiff is a citizen and resident of the county, that about 1 July, 1893, the plaintiff and defendant were married at Milwaukee, Wisconsin; that for four or five years previous thereto, and up to the marriage, they had lived and habitually co-habited together at 6337 Carpenter street, Chicago, Illinois, and during that time there was born to them, on 15 November, 1892, a son, of whom the plaintiff was, and has always been reputed to be, the father, and that the plaintiff and the defendant have continued to live together since the marriage. The wife answers, admitting all of above allegations, except that she denies that plaintiff is a resident and citizen of the county, and for a further defense alleges cruel treatment by plaintiff, for which she has an action for divorce *a mensa et thoro* pending and that the Clerk of the Superior Court has no jurisdiction. The child was made a party defendant, and through his *guardian ad litem* answered, admitting all the above-recited allegations of the complaint. The Clerk granted the petition, and his judgment, on appeal, was affirmed by the Judge at chambers, from which judgment the wife appealed.

The plaintiff contends that, by virtue of The Code, Sec. 136, the words "Superior Court," in section 39, means the Clerk, and that if this is not so, the case having gotten before the Judge of the Superior Court, his action is valid by virtue of chapter 276, Laws 1887, amending The Code, Sec. 255, and relies on *Roseman v. Roseman,* 127 N. C., 494, and *Ury v. Brown,* 129 N. C., 270, and cases there cited. The defendant contends that, considering the caption of section 39, as

may be done, *State v. Woolard,* 119 N. C., 779, and other language in section 39, that section 126 does not apply, but the Superior Court at term alone has jurisdiction, and that this defect is not cured by the appeal to the Judge at chambers.

We are not called upon to decide this very interesting question, because, upon the face of the petition, there is a fatal defect, in that no cause of action is stated—a defect which the Court must notice *ex mero motu. Nash v. Farrabow,* 115 N. C., 303; *Ladd v. Ladd,* 121 N. C., 118; *Cary v. Allegood, Ibid.,* 54. This proceeding is provided to legitimate illegitimates, but it appears from the averments in the complaint that the child is already legitimated.

By the laws of this State, the subsequent marriage of the parent does not legitimate their children born prior to the marriage. But legitimacy is a *status,* and by the laws of Illinois the subsequent marriage of the parents legitimates their prior offspring. "If the mother of any bastard child and the reputed father shall, at any time. after its birth, intermarry, the said child shall in all respects, be deemed and held legitimate." Rev. Stat. (1895), page 203, Sec. 15. The parties were domiciled, according to the complaint, at the time of the child's birth and up to the time of the marriage, in Illinois, and it is well settled that the child, being still a minor, its legitimacy then accrued and accompanies it wherever it goes. Even if the domicile had been in Wisconsin at the time of the marriage, the law there is the same, if the father recognized the child as his, as it appears he did. Rev. Stat. Wisconsin (1778), Sec. 2274. The Illinois statute was enacted as far back as 1845.

By both the civil and canon law the subsequent marriage of the parents legitimated their offspring born before marriage. 1 Bl. Com., 454. It was when the Bishops at the Parliament held at the Priory of Merton in Surrey (in 1236) attempted to procure a change in the common law to that effect that the

Barons answered, *"Nolumus leges angliae mutare"*—*"*We are unwilling to change the laws of England" (1 Bl. Com., 456; 2 Kent Com., 209), and made an entry on the Journal, 20 Hen. III., C. 9, which is known as the statute of Merton. This remains the law of England to-day, as it does in North Carolina, though Virginia and many other States, as well as Illinois and Wisconsin, have adopted the civil law in this particular. It seems well settled in England, as well as elsewhere, that when by the law of the domicile of the parents, both at the time of the birth and the law of the domicile at the time of the subsequent marriage of the parents, the effect of the marriage is to legitimate the children, the legitimacy attaches (if the children are not adults), and goes with them wherever they go. "If by that law he is thereby rendered legitimate, he will be regarded as legitimated everywhere, even in States whose laws do not recognize subsequent legitimation." Minor Confl. Laws, Sec. 99, citing very numerous authorities. The English Courts only differ from others in holding that it is the law of the father's domicile at the *time of the birth* which governs, and not the law of the domicile at the time of marriage. Minor, *ut supra,* where the whole subject is clearly and interestingly discussed. To same purport, Dicey Confl. Laws, Rule 134; Wharton Law of Nations, 172; Wharton Confl. Laws, Secs. 240-248; Story Confl. Laws, Sec. 93-93v (8th Ed.), where the subject is exhaustively considered; *Miller v. Miller,* 91 N. Y., 315, 43 Am. Rep., 669; *Ross v. Ross,* 129 Mass., 252, 37 Am. Rep., 321. The American authorities, all to same purport, will be found collected in 3 Am. and Eng. Enc., 895 and 6; 6 Century Digest, C. C. 1827-1830. In *Ross v. Ross, supra,* Gray C. J., reviews all the authorities up to that decision (1880); see also *Adams v. Adams,* 154 Mass., 290, 13 L. R. A., 275, and notes.

As the child was legitimate, upon the allegations in the

complaint, when the child came to this State, the removal of his parents hither could not have the effect to make him a bastard, and the complaint states no cause of action.

A similar instance is that of a marriage solemnized in a State, whose laws permit such marriage, between a negro and a white person domiciled in such State. This is valid on their removal to this State, though such marriage would have been invalid if such parties had been domiciled here. *State v. Ross,* 76 N. C., 242, 22 Am. Rep., 678; *Woodard v. Blue,* 103 N. C., at page 114. The *status* accompanies the person, and is not changed by the removal.

Action Dismissed.